UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| AMY DUNCAN, | Case No. 1:16-cv-1003 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Amy Duncan filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In May 15, 2013, Plaintiff filed an application for Supplemental Security Income alleging a disability onset date of March 20, 2013, due to mental and physical impairments. (Tr. 156, 238). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On July 23, 2015, ALJ Kevin Deatherage held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On November 3, 2015, the ALJ denied Plaintiff's application in a

1

written decision. (Tr. 32-41). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was born March 28, 1973 and was 40 years old at the time of her application. (Tr. 41) She completed high school and was enrolled in special education classes beginning in second grade. She has no past relevant work. She alleges disability due to her mental impairments; namely, bipolar disorder, depression, affective disorder and borderline intellectual functioning.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "chronic obstructive pulmonary disease (COPD), asthma, diabetes, obesity, depression, and affective disorder." (Tr. 34). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs. She should avoid exposure to hazards such as heights or machinery with moving parts, and she should avoid concentrated exposure to dusts, fumes, gases, odors, extreme cold or heat, poorly ventilated areas, or humidity. She cannot do production rate pace work. She can tolerate only occasional changes in a routine workplace setting and only occasional contact with coworkers, supervisors, and the general public. She is likely to be absent from work one day per month and to be off task 10% of the work period.

(Tr. 37-38). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform work in the national economy including such jobs as packager, folder, and inspector. Accordingly, the ALJ determined that Plaintiff is not

under disability, as defined in the Social Security Regulations, and is not entitled SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to find that Plaintiff's impairments meet or equal Listing 12.05(c); (2) assigning little weight to the findings of Plaintiff's treating clinical nurse; 3) improperly evaluating Dr. Groneck's findings; 4) failing to find that Plaintiff's migraines were a severe impairment. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

*1. Listing 12.05 (C)*

Plaintiff's first assignment of error contends that the ALJ erred in finding that her impairments do not meet or equal the requirements for Listing 12.05(C). Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

Listing 12.05 provides as follows:

12.05 *Mental Retardation:* mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

    A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

    B.    A valid verbal, performance, or full scale IQ of 59 or less; OR

    C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function OR

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence or pace; or
> 4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987) (citing *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that her impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter,* 279 F.3d 348, 354 (6th Cir.2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria...." *Carmack v. Barnhart,* No. 04–6152147 Fed.Appx. 557, *560 (6th Cir.2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community

6

setting." DSM–IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.,* 240 F. App'x 692, 698 (6th Cir.2007) (citing *Heller v. Doe by Doe,* 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM–IV, p. 49.B

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing. (Tr. 17-18). Specifically, with respect to Listing 12.05C, the ALJ's decision states in relevant part:

> The "paragraph C" criteria of listing 12.05 are not met because, although the claimant was measured with a full scale IQ of 67 and a verbal comprehension score of 70 during consultative psychological examination in August 2013, the examining psychologist found her to have verbal and nonverbal reasoning abilities falling in the borderline range. The examining psychologist also noted that the claimant graduated from high school with variable grades in special education classes, with reported learning problems in reading, writing, and math. He stated that the claimant's overall intellectual abilities fall in the "extremely low" range, rather than at a level indicative of intellectual disability. The consultatively examining psychologist diagnosed borderline intellectual functioning rather than intellectual disability, demonstrating his opinion that other appropriately considered factors concerning the claimant's mental health status outweigh the results of intelligence testing concerning the presence of intellectual disability.

(Tr. 37).

Plaintiff argues, however, that the ALJ's decision in this regard is not substantially supported because the record establishes that she has qualifying IQ

7

scores and that her school records establish deficits in adaptive functioning before age 22. Plaintiff's contention is misplaced.

As noted above, an IQ score standing alone, is insufficient to meet the Listing requirements of 12.05(C). As noted above, Plaintiff must first demonstrate that her impairment(s) satisfies the diagnostic description for mental retardation within 12.05. In this case, there is no evidence in the record that she has been diagnosed with mental retardation, nor evidence that Plaintiff suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning." *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). Notably, Ms. Kunesh, the school psychologist who administered Plaintiff's IQ testing, never diagnosed mental retardation. (Tr. 320, 332).

Moreover, adaptive functioning refers to "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." See DSM-IV-TR at 42. As the Sixth Circuit has noted, adaptive deficits refer generally to an individual's "effectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 F. App'x at 698. The ALJ directly addressed these areas in his decision and showed how the claimant's problems did not rise to a listing level. Notably, the ALJ and the State Agency reviewing psychologists found no more than moderate limitations in any areas of relevance to adaptive skills. (Tr. 36, 41, 149, 163). *See also Courter*, 479 F. App'x at 721 (the fact that "none of the experts found 'marked' restrictions or difficulties, instead finding only 'moderate' or 'mild' limitations" "supported [the ALJ's] finding that [Plaintiff] did not qualify as mentally

8

retarded under Section 12.05"). No doctor found more than moderate limitations in such areas.

Here, the ALJ discussed in detail Plaintiff's lack of diagnosis of intellectual disability or mental retardation. Further, the ALJ noted Plaintiff's broad daily activities and social functioning, which was sufficient to rebut the presence of adaptive deficits. It is well settled that a Plaintiff retains the burden at the third step of the sequential evaluation to establish that she meets or equals a listed impairment. *See Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987). Because it is her burden, at step three, to show that a listing can be met or equaled, Plaintiff's assignment of error should be overruled.

*2. Weight assigned to Ms. Spradlin*

Plaintiff argues next that the ALJ erred by assigning little weight to the findings of Ms. Spradlin, Plaintiff's treating clinical nurse. Plaintiff's contention lacks merit.

The record indicates Plaintiff began treating at Solutions Community Counseling and Recovery in October 2013. Ms. Duncan's clinical nurse at Solutions, Ms. Spradlin completed a medical source statement describing Ms. Duncan's limitations and abilities in October 2014. (Tr. 501-503). Ms. Spradlin, relying on her experience and her longitudinal treatment history, determined that Ms. Duncan had "marked" limitations in the following:

- ability to accept instruction from or respond appropriately to criticism from supervisors or superiors;
- ability to work in coordination with or in proximity to others without distracting them or exhibiting extremes;
- ability to respond appropriately to co-workers or peers;

9

- ability to relate to the general public and maintain socially appropriate behavior;
- ability to perform and complete work tasks in a normal work day or work week at a consistent pace;
- ability to process subjective information accurately and to use appropriate judgment;
- ability to carry through instructions and complete tasks independently;
- ability to maintain attention and concentration for more than brief periods of time;
- ability to perform at production levels experienced by most employers;
- ability to respond to changes in work setting;
- ability to behave predictably, reliably and in an emotionally stable manner;
- ability to maintain personal appearance and hygiene; and
- ability to tolerate customary work pressures.

(Tr. 501-503).

Ms. Spradlin went on to note that Ms. Duncan has a "marked impairment in her ability to tolerate even mild stress. Stress of any type causes worsening of symptoms and less ability to manage illness." (Tr. 503).

In formulating Plaintiff's RFC, the ALJ assigned little weight to the findings of Ms. Spradlin. In so concluding, the ALJ noted that Ms. Spradlin was not an acceptable medical source as defined by Agency Regulations. In any event, the ALJ's RFC did incorporate Ms. Spradlin's opinion in part, finding that Plaintiff cannot do any production rate work, can tolerate only occasional changes in the routine workplace setting, and can tolerate only occasional contact with coworkers, supervisors and the general public. (Tr. 40). Plaintiff argues, however, that the ALJ failed to properly evaluate Ms. Spradlin's opinion in accordance with SSR 06-03p. Plaintiff's assertion is unavailing.

An administrative law judge is not required to afford the same level of deference to opinions of "other sources" as he or she must afford to the opinions of "acceptable

medical sources." See 20 C.F.R. § 404.1513(a) (noting that information from "other sources" cannot establish the existence of an impairment, and that there must be evidence from an "acceptable medical source" for this purpose). In any event, the ALJ must "consider all relevant evidence in the case record," which necessarily includes evidence from "other sources." Social Security Ruling (SSR) 06–03p, 2006 WL 2329939 (Aug. 9, 2006) (providing that in assessing the weight afforded to opinions from other medical sources," the Commissioner will consider the same factors utilized to assess opinions from acceptable medical sources such as the length, nature, and extent of the relationship, the consistency of the opinion with other evidence, and the degree to which the source presents relevant evidence to support an opinion).

The ALJ properly considered that Ms. Spradlin was not an acceptable medical source under the regulations, but was considered "other source". (Tr. 40). See 20 C.F.R. § 404.1513(d); *Engebrecht v. Comm'r of Soc. Sec.,* 572 F. App'x 392, 399 (6th Cir.2014) (a therapist—is not properly classified as an "acceptable medical source" opinion but is an "other source" opinion); *See also* 20 C.F.R. § 404.1513 (1997); *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir.2007) (a nurse practitioner is listed under "other [non-medical] sources."). The ALJ's decision further indicates that he included part of Ms. Spradlin's findings that he found consistent with the evidence of record.  Moreover, the ALJ relied on the findings of State Agency psychologists Dr. Zwissler and Dr. Tangeman, who both found moderate limitations. (Tr. 149, 163).

As noted by the Commissioner, while the ALJ could have explained in more detail within the same paragraph why he did not think Ms. Spradlin's opinion was consistent with the record evidence, his decision clearly complies with SSR 06-09p.

Notably, "SSR 06–03p, in contrast to regulations pertaining to the handling of treating source opinions, does not require that an adjudicator articulate 'good reasons' for the rejecting of an 'other source's' opinion...." *Saucier v. Astrue,* 2011 WL 1158256, *5 (D. Me. March 28, 2011), *adopted and affirmed* 2011 WL 1526952 (D. Me. Apr. 22, 2011). *See* also *Stanley v. Comm'r of Soc. Sec.*, No. 1:14-CV-870, 2015 WL 9473402, at *5 (S.D. Ohio Dec. 2, 2015), *report and recommendation adopted*, No. 1:14CV870, 2015 WL 9460322 (S.D. Ohio Dec. 28, 2015) ("While regulations require an ALJ to articulate 'good reasons' on the record only when rejecting the opinion of a treating *physician*, in this case, the ALJ went far beyond than what the regulations require by articulating 'good reasons' for rejecting the physical therapist's opinions.").

*3. Dr. Groneck*

Plaintiff argues next that the ALJ failed to properly evaluate Dr. Groneck's findings. Notably, in August 2013, Taylor Groneck, Psy.D. provided a consultative psychological evaluation of Plaintiff. (Tr. 365-72). Dr. Groneck's evaluation included WAIS-IV intelligence testing in which Plaintiff obtained a full scale IQ of 67 with a verbal comprehension score of 70 and a perceptual reasoning score of 71. (Tr. 369-70). Dr. Groneck further opined that Plaintiff's abilities in verbal and nonverbal reasoning were "falling in the borderline range." (Tr. 37). He determined that Plaintiff demonstrated comprehension problems and required simplification of questions to ensure understanding. He found that Plaintiff had limited short-term and working memory ability and would likely experience difficulty retaining multistep job instructions. He further found that her ability to focus and concentrate appeared to be adequate, that her ability to focus did not seem to be limited, and that she worked hard and persisted well

12

despite a slow work pace. Dr. Groneck concluded, *inter alia*, that due to Plaintiff's intellectual limitations, she would likely struggle to adjust to major and unexpected changes in working conditions and would require support when adjusting to a change in task.

The ALJ assigned great weight to Dr. Groneck's assessment because it was based upon his examination of Plaintiff and his narrative report was consistent with the findings from his examination. Thus, the ALJ relied on Dr. Groneck's findings in formulating Plaintiff's RFC. As noted above, the ALJ found that Plaintiff could not do production rate pace work, could tolerate only occasional changes in the routine workplace setting, and can tolerate only occasional contact with coworkers, supervisors and the general public. (Tr. 40).

Plaintiff contends that the ALJ's RFC is not substantially supported because he did not accommodate Dr. Groneck's limitation that Plaintiff "would likely require support when adjusting to a change in task," despite giving Dr. Groneck's opinion great weight. (Pl. Br. at 15; Tr. 372). Plaintiff's contention lacks merit.

Notably, the ALJ was not required to incorporate any of the opined limitations into the RFC. It is the ALJ's sole duty to determine Plaintiff's RFC and there is no requirement that the ALJ adopt the opinion of any medical source. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory

responsibility to determine whether an individual is disabled.") (internal quotation marks and citation omitted).

Moreover, the fact that the RFC differed slightly from these opinions does not show error because it was the ALJ's role—not the psychologists'—to assess Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the final responsibility for crafting an RFC is reserved to the Commissioner); see also *Roy v. Apfel*, 23 F. App'x 389, 390 (6th Cir. 2001) ("[T]he ALJ did not impermissibly substitute his own opinion for that of the doctors because the ALJ was speaking about residual functional capacity, an area where the ALJ makes the legal decision."); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.").

More importantly, the ALJ accommodated this opinion from Dr. Groneck by limited Plaintiff to unskilled work. As noted by the Commissioner, unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Such jobs can usually be learned in 30 days. *Id.* As such, unskilled jobs entail tasks that can be learned quickly, suggesting that they do not require retraining on the job or changing tasks. Furthermore, at step-five of the sequential evaluation, the jobs identified by the vocational expert that plaintiff could perform (packager, folder and inspector) all involve "repetitive or short cycle work." (See Dictionary of Occupational Titles ("DOT") 559.687-074 (G.P.O.), 1991 WL 683797 (4th Ed. 1991); DOT 369.687-018 (G.P.O.), 1991 WL 673072 (4th Ed. 1991); DOT 741.687-010 (G.P.O.), 1991 WL 680249 (4th Ed. 1991).

Accordingly, the undersigned finds that the ALJ properly evaluated the findings of Dr. Groneck as required by agency regulations and controlling law.

*4. Migraines*

Plaintiff's final assignment of error asserts that the ALJ erred at step-two of the sequential evaluation process by failing to consider Plaintiff's migraines in his decision and failing to classify them as a severe or non-severe medically determinable impairment. (Pl. Br. at 16).

At step two, the Commissioner determines if one or more of the claimant's impairments are "severe." For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may

15

cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including chronic obstructive pulmonary disease (COPD), asthma, diabetes, obesity, depression, and affective disorder and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's migraines as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 23). The ALJ also mentioned migraines at multiple points in the decision, adopted medical opinions that considered migraines to be severe, and included migraine-related limitations in the RFC finding.

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                               *s/Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| AMY DUNCAN, | Case No. 1:16-cv-1003 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).