# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Amy Duncan,

    Plaintiff,

    v.                                                   Case No. 1:16cv1003

Commissioner of Social Security                Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon the Magistrate Judge's February 14, 2018 Report and Recommendation ("R&R") which recommends that the decision of the Commissioner be affirmed. (Doc. 15).

Notice was given to the parties under 28 U.S.C. §636(b)(1)(c). Plaintiff filed objections to the Magistrate Judge's R&R. (Doc. 16). The Commissioner filed a Response to the Objections. (Doc. 17).

**I.**    **BACKGROUND**

The Magistrate Judge completed a comprehensive review of the record and the same will not be repeated here. Plaintiff objects to the Magistrate Judge's R&R on the basis that (1) the ALJ's determination that Listing 12.05(C) was not met is not supported by substantial evidence; (2) the ALJ erred by omitting limitations related to migraine headaches in the RFC; (3) the ALJ did not provide good reasons for the weight assigned to Nurse Specialist Spradlin;(4) and the ALJ failed to incorporate Dr. Groneck's limitations in the RFC.

For the most part, these objections repeat the arguments made by Plaintiff in the Statement of Specific Errors.

## II. ANALYSIS

### A. Listing 12.05(C)

At the third step of the five-step disability evaluation process, a claimant will be found disabled if his or her impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Plaintiff argues that the ALJ's finding that Plaintiff's impairment did not meet Listing 12.05(C) was not supported by substantial evidence.

> Listing 12.05(C) provides:
>
> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).[1]

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R.. § 404.1525(c)(3). A claimant must satisfy all of the criteria to meet the listing. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th

---

[1] Listing 12.05(C) was amended on August 1, 2013, to replace the phrase "mental retardation" with "intellectual disability." *See* 68 Fed.Reg. 46, 499–01 (Aug. 1, 2013)). The change does not affect how a claim is evaluated under Listing 12.05, and courts still use the old term. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 536, n. 1 (6th Cir. 2014).

Cir. 2009). "During the first four steps, the claimant has the burden of proof; the burden shifts to the SSA only for the fifth step." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997)). Therefore, the claimant bears the burden of proving every element of the listing. *King v. Sec'y Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1986).

Plaintiff points to a qualifying IQ score prior to age 22. However, a claimant must make three showings to satisfy Listing 12.05(C): (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)).[2] While Plaintiff argues that the ALJ only partially considered the records available for review, Plaintiff does not cite to specific instances in the records which would demonstrate Plaintiff met every element of Listing 12.05(C).

Plaintiff acknowledges that she was diagnosed with borderline intellectual functioning, not intellectual disability. "Although an [intellectual disability] diagnosis is

---

[2]The introductory section to the mental disorders listings explains that:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraph A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination." *Peterson v. Comm'r of Soc. Sec.*, 552 Fed.Appx. 533, 539 (6th Cir. 2014) (citing *Cooper v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 450, 452 (6th Cir. 2007)). As the Magistrate Judge explained, the ALJ discussed Plaintiff's lack of diagnosis in detail. In addition, the ALJ discussed Plaintiff's daily activities and social functioning, which showed an absence of adaptive functioning. "The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) (citing *Heller v. Doe*, 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28–29 (3d rev. ed. 1987) ("DSM–III"))); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 12.00C(1) (defining adaptive activities to include activities of daily living such as cleaning, cooking, shopping, paying bills, maintaining a residence, taking public transportation, using telephones, and exercising proper self-care). The ALJ explained that Plaintiff was only mildly restricted in her activities of daily living. (Tr. 36). The ALJ noted that Plaintiff spends her days doing household chores, goes grocery shopping with her husband, and is able to pay her own bills. (Id.) The ALJ found only mild restrictions in social functioning. (Id.) The ALJ noted that while Plaintiff testified that at times she will get angry, the psychologist who reviewed the record found Plaintiff to have no difficulties in social functioning. (Id.)

Therefore, the Court finds no error in the Magistrate Judge's conclusion that the ALJ properly determined that Plaintiff's impairments do not meet the requirements of Listing 12.05(C).

4

## B. RFC

Plaintiff argues that the ALJ erred by omitting limitations related to migraine headaches in the RFC. Plaintiff argues that these limitations should have been reflected in the RFC, regardless of whether Plaintiff's migraine headaches were considered a severe impairment at Step 2 of the sequential analysis.

A claimant's RFC is to be an "assessment of [her] remaining capacity for work" once her limitations have been taken into account. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). It is an assessment of what a claimant can and cannot do, not what she does and does not suffer from. *Id.* Social Security Ruling 96–8p provides that:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996).

At the hearing before the ALJ, Plaintiff testified that she gets severe, migraine-type headaches three times per week. (Tr. 59). Plaintiff explained that when she has the headaches, she has to be in total darkness. (Id.) Plaintiff testified that she has been having the headaches since 1999. (Tr. 60). The ALJ then asked the Plaintiff:

Q  So you had them when you were working, too, then?

A  Yes.

> Q    So it didn't stop you from working, the headaches?
>
> A    I would be taking Tylenol pretty much daily.

(Id.)   When asked about her current medications, Plaintiff explained that she is taking Tylenol for her headaches.   (Tr. 64-65).

In discussing Plaintiff's migraine headaches, the ALJ cited the findings of Dr. Dale Kimbrough, M.D., who performed a consultative physical examination of Plaintiff.   The ALJ explained: "Dr. Kimbrough also noted that, although the claimant complained of migraine headaches, she was actively shaking her head during the examination and demonstrated a normal, painless affect."   (Tr. 39).

In formulating the RFC, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 416.929 and SSR 96-4p and 96-7p."   (Tr. 38).   The ALJ found Plaintiff to be only a partially credible witness, and therefore placed "significant reliance" on the objective medical record to determine her RFC.   (Tr. 38-39).

Plaintiff has not identified any limitations or restrictions which stem from her migraine headaches.   Plaintiff has also failed to cite to medical evidence in the record which would support additional limitations in the RFC.   As such, the Court concludes that the ALJ's RFC assessment is supported by substantial evidence.   *Accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807-808 (E.D. Mich. 2013) (finding that even though the ALJ did not specifically discuss the plaintiff's migraine headaches, substantial evidence supports ALJ's RFC finding where the plaintiff did not show how the ALJ would have altered her RFC assessment and on what evidence that

6

decision would be based).   Therefore, the Magistrate Judge did not err in finding that the ALJ properly assessed Plaintiff's RFC.

      **C.**      **Nurse Specialist Spradlin**

Plaintiff argues that the ALJ did not provide good reasons for the weight assigned to Nurse Specialist Spradlin.  As the Magistrate Judge explained, Spradlin is Plaintiff's treating clinical nurse.  Spradlin completed a medical source statement and indicated that Plaintiff has "marked" limitations in several areas.  (Tr. 501-503).  The ALJ explained that he gave Spradlin's opinion little weight because it did not come from a qualified medical source, but also explained: "[t]o the extent it is given any weight, it is accommodated by finding that the claimant cannot do production rate pace work, can tolerate only occasional changes in the routine workplace setting, and can tolerate only occasional contact with coworkers, supervisors, and the general public."  (Tr. 40).

The Social Security regulations divide medical sources into "acceptable medical sources" and "other medical sources."  A nurse or nurse practitioner is not an "acceptable" medical source.  *Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. Appx. 582, 584 (6th Cir. 2016).  The Court notes that Social Security Ruling 06-03P only requires that the ALJ "generally . . . explain the weight given to opinions from" other medical sources.  SSR 06-03P, 2006 WL 2329939, at *6; 20 C.F.R. §§ 404.1527(f)(2) & 416.927(f)(2) (stating "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").  The Court finds that the ALJ met this standard here, and therefore the Magistrate Judge did not err in

7

finding that the ALJ's decision complied with Social Security Ruling 06-09P.

## D. Dr. Groneck

Dr. Taylor Groneck, Psy.D conducted a consultative psychological evaluation of Plaintiff. (Tr. 365-372). Plaintiff argues that the ALJ failed to incorporate Dr. Groneck's limitations in the RFC. Specifically, Plaintiff points out that while the ALJ found that Plaintiff could "tolerate only occasional changes in a routine workplace setting," the ALJ did not include Dr. Groneck's opinion that Plaintiff would "require support when adjusting to a change in a task."

As the Magistrate Judge explained, the ALJ was not required to incorporate any of Dr. Groneck's limitations into the RFC because the Commissioner has final responsibility for deciding an individual's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (citing SSR 96–5p, 1996 WL 374183 (July 2, 1996)). In any event, the Court finds that Dr. Groneck's limitations are reflected in the RFC. The ALJ explained:

> Dr. Groneck concluded that, due to her intellectual limitations, the claimant would likely struggle to adjust to major and unexpected changes in working conditions and would require support when adjusting to a change in task. I give this assessment is great weight as it is based upon direct examination of the claimant, with the conclusions drawn by the examiner being consistent with the narrative report of that examination. It is accommodated by finding that the claimant cannot do production rate pace work, can tolerate only occasional changes in the routine workplace setting, and can tolerate only occasional contact with coworkers, supervisors, and the general public.

(Tr. 40). In addition, as the Magistrate Judge explained, the ALJ limited Plaintiff to unskilled work, and the jobs identified by the vocational expert were all jobs involving "repetitive or short cycle work." As such, Plaintiff would not be required to adjust to major

and unexpected changes in working conditions. Therefore, the Court finds no error in the Magistrate Judge's conclusion that the ALJ properly evaluated the findings of Dr. Groneck in assessing Plaintiff's RFC.

## III.   CONCLUSION

Based on the foregoing, the Magistrate Judge's February 14, 2018 R&R (Doc. 15) is **ADOPTED**. Accordingly, the decision of the Commissioner is affirmed. This matter shall be closed and terminated from the active docket of this Court.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court